FILED

2017 May-24  AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **MARTIN FORSYTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **UNIVERSITY OF ALABAMA** | ) | |
| **BOARD OF TRUSTEES, and** | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| **NEAL DICHIARA,** | ) | **TRIAL BY STRUCK JURY** |
| | ) | |
| **DUANE LAMB,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## COMPLAINT

_____

## INTRODUCTION

Plaintiff Martin Forsyth brings this action for legal and equitable relief to address unlawful employment practices and violations of federal and state law by Defendants University of Alabama Board of Trustees, Neal DiChiara, and Duane Lamb.

## JURISDICTION AND VENUE

1.      Plaintiff seeks legal and equitable relief to redress Defendants' violations of the Plaintiff's rights secured by:

        a.      Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*., as amended;

        b.      First Amendment of the United States Constitution;

        c.      Fourteenth Amendment of the United States Constitution;

        d.      Asbestos School Hazard Abatement Reauthorization Act of 1990 ("ASHARA"), 20 U.S.C. § 4011(b)(4);

        e.      Asbestos School Hazard Detection and Control Act ("ASHDCA"), 20 U.S.C. § 3608;

        f.      State Employee Protection Act, Alabama Code § 36-26A-3;

        g.      42 U.S.C. § 1983.

2.      Federal subject matter jurisdiction exists pursuant to:

        a.      28 U.S.C. §§ 1331 (federal question), 1337 (commerce clause), 1343 (civil rights), 1367 (pendent jurisdiction);

        b.      29 U.S.C. § 794 (Rehabilitation Act).

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## **PARTIES**

4.      Plaintiff Martin Forsyth ((hereinafter "Plaintiff" or "Forsyth") is a resident of Tuscaloosa County, Alabama, and is over the age of nineteen (19) years.  Plaintiff was employed by the University of Alabama Board of Trustees at

its campus in Tuscaloosa, Alabama as a Carpenter in the Facilities & Grounds Department from October 17, 2005 to July 27, 2015.

5.      Defendant University of Alabama Board of Trustees (hereinafter "Defendant" or "BOT") was the Plaintiff's employer during all times relevant to this lawsuit.  Defendant employs at least 50 persons within the meaning of the Rehabilitation Act of 1973.

6.      Defendant is an enterprise engaged in commerce or in the production of goods for commerce in that it operates an institution of higher education and engages in an activity of a public agency.  29 U.S.C. § 203(s)(1)(B)&(C).

7.      Defendant Neal DiChiara ((hereinafter "DiChiara") is a resident of Jefferson County, Alabama, and is over the age of nineteen (19) years.  DiChiara was an agent of University of Alabama Board of Trustees at all times relevant to this Complaint.  DiChiara is being named in his official and individual capacities.

8.      Defendant Duane Lamb (hereinafter "Lamb") is a resident of Tuscaloosa County, Alabama, and is over the age of nineteen (19) years. Defendant was an agent of University of Alabama Board of Trustees at all times relevant to this Complaint.  Lamb is being named in his official and individual capacities.

**NATURE OF ACTION**

9.      Plaintiff brings this action against Defendant for violations of his

3

right to free speech and due process under the United States Constitution and acts of disability discrimination and retaliation that occurred during his employment with Defendant.

10.     This is an action to redress grievances resulting from acts of Defendants, its agents, servants, and employees with respect to Plaintiff's employment; and for a permanent injunction restraining BOT from maintaining a policy or practice of discriminating against employees with disabilities, retaliating against employees who report Defendants' public safety violations, and violating employees' due process rights through termination.

11.     Plaintiff seeks all legal and equitable relief to which he is entitled, including attorneys' fees and costs. Plaintiff further requests injunctive relief prohibiting Defendants from further illegal discrimination and requiring Defendant BOT to provide training on employment law and reporting procedures, at its cost, for all employees, managers, and trustees of Defendant.  Further relief is requested as deemed just and necessary by this Court.

## ADMINISTRATIVE PROCEDURES

12.     On August 31, 2015, within 180 days of the acts of discrimination of which he complains, Forsyth filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").  **(See Exhibit A).**

13.     On February 22, 2017, the EEOC issued Forsyth a Notice of Right

4

to Sue.  **(See Exhibit B).**

## STATEMENT OF FACTS

14.    Plaintiff was hired by BOT on October 17, 2005 to work as a Carpenter II and was later promoted to a Carpenter III in the Building Maintenance department, which is a division of Facilities & Grounds.

15.    Plaintiff's direct supervisors were the Manager, Assistant Manager, and Associate Manager of Building Maintenance. From 2005 to 2009, Walter Powell was the Manager and Michael Hubbard was the Associate Manager of Building Maintenance.  From 2005-2009, Plaintiff received positive performance evaluations, accolades from his supervisors, a promotion, and no disciplinary action.

16.    In 2007, Mr. Hubbard commended Plaintiff for his job knowledge, leadership qualities, craftsmanship, ability to follow the commands of his superiors, and ability to work well with his co-workers. Plaintiff's 2008 evaluation states he "continues to do a good job!!!" Plaintiff's 2009 evaluation states that Forsyth has proven to be "the best choice" to have been promoted to Carpenter III during the previous six (6) months.

17.    In 2009, Neal DiChiara became the Manager of Building Maintenance.  Also in 2009, Clint Hamner was hired as Assistant Manager and became one of Plaintiff's supervisors.  During this time, Mr. Hubbard continued

to be the Associate Manager. Mr. Hamner prepared Plaintiff's next evaluation and stated that he met expectations and "is a natural leader and the one that people look to . . . great year and great craftsmanship on all projects!"

18.     In 2010, Plaintiff and other Building Maintenance employees were assigned to work in half of the old Health Department Building which is also known as the South Lawn Building.  Office employees in the Women's Resource Center were working in the other half of the building and sharing the same air plenum. Plaintiff became aware that asbestos was present in the Health Department Building in the floor tile in the Tuberculosis Clinic and that UA had failed to properly abate the asbestos.

19.     Once asbestos is suspected of being present in a facility, UA policy prohibits employees from working in that facility until the asbestos is fully abated by trained professionals. As a supervisor of the carpenters working in the South Lawn building, Plaintiff felt an obligation to review and determine the safety of the work environment for his crew and report any safety concerns.

20.     Rather than follow proper procedure by removing all personnel during asbestos abatement, David Marlowe, the Pest Control Manager, assigned an asbestos abatement team to remove the asbestos while the Building Maintenance and Women's Resource Center employees were working in the building and sharing the same air supply as the abatement team. The asbestos

abatement team should be supervised by a trained supervisor and work out of the Environmental Health & Safety Department ("EHS").  Plaintiff discovered that UA violated this practice in the South Lawn building.  The asbestos abatement team was improperly working out of the Building Maintenance department under the supervision of David Marlowe, who had no training or qualifications to supervise abatement. Mr. Marlowe's background was as the Pest Control Manager. Under Mr. Marlowe's supervision, the abatement team was breaking up the asbestos material which made it friable and released it into the air as hazardous material while other employees were present in the building. Plaintiff became concerned about the safety of these employees who were exposed to asbestos.

21.     On September 2, 2010, Plaintiff left the work site and immediately reported to EHS concerns that students, UA personnel, and workers may be exposed to friable asbestos in the South Lawn building.

22.     After Plaintiff reported concerns about improper asbestos abatement, Jeff Ackers, Dennis Connell, and Plaintiff became concerned that Mr. DiChiara may retaliate against them for reporting asbestos. Mr. Ackers, Mr. Connell and Plaintiff met with Travis Railsback in Human Resources to report their concern about possible retaliation. Mr. Railsback assured them that they would not be subjected to retaliation for reporting the problems.

7

23.     After reporting asbestos, Mr. DiChiara sought reasons to discipline Plaintiff in retaliation for reporting improper asbestos abatement.  In less than 3 weeks, on September 21, 2010, Mr. Hubbard gave Plaintiff his first corrective verbal counseling action, citing UA's "Standards of Behavior" Policy and stating that the disciplinary action could have been avoided by Plaintiff "trusting his supervisors."  According to the disciplinary form, Plaintiff left his assigned work site during work hours on September 2, 2010 without proper authorization from his supervisor when he went to report improper asbestos abatement to EHS. Shortly after September 2, 2010, Mr. DiChiara also issued a written warning to Mr. Ackers and Mr. Connell.

24.     Plaintiff followed UA guidelines to dispute this disciplinary action with Human Resources. Plaintiff submitted a written statement contesting the verbal warning and requesting it be removed from his employee record.  In his statement, Plaintiff complained that he was being retaliated against by management for reporting the improper abatement of hazardous materials. Plaintiff also complained that it was routine for employees to leave a job site to retrieve building materials without the express knowledge of a supervisor, and that no employees had been disciplined for doing so in his five (5) years of employment.  Plaintiff further explained that by leaving to report the safety policy violations, he was following UA policy and did not affect the job assignment from

being completed on time.

25.     The renovations were, in fact, completed on time and correctly.  The September 16, 2010 minutes for the Maintenance Advisory Committee Meeting reflect that Mr. Paul Weubold, Executive Director of Facilities & Grounds, commended Plaintiff's crew for timely and professionally completing the renovation of the South Lawn Building.

26.     Mr. DiChiara continued to look for reasons to discipline Plaintiff over frivolous matters and false accusations.  On June 29, 2011, Mr. DiChiara disciplined Plaintiff by suspending him without pay for 3 ½ days. Plaintiff was suspended for alleged "insubordination" for asking about missing a "mandatory" meeting on ethics which Mr. DiChiara failed to announce until the last minute. The meeting was scheduled for after work hours at 2:30 p.m. during a time Plaintiff had prior travel plans with his family.  Donna McCray, Operations Coordinator for Facilities & Grounds, notified Mr. DiChiara about the meeting on May 25, 2011, but no one notified Plaintiff or his crew until 10:20 a.m. on July 29, 2011, approximately four hours before the meeting.

27.     Around 10:45 a.m., Plaintiff expressed concern to Mr. Hubbard that he was only given 4 hours' notice of the meeting and had a conflict with the meeting time due to a previous engagement.  Mr. Hubbard told Plaintiff he could miss the meeting if necessary. Around 11:00 a.m., Plaintiff also sought the

approval of Mr. DiChiara to miss the meeting. Plaintiff told Mr. DiChiara he was unable to attend and asked about the consequences of missing the meeting. Initially, Mr. DiChiara responded "I don't know. I wasn't given any," but then challenged Plaintiff to not show up and "just see what happens."  Plaintiff asked Mr. DiChiara if he was threatening Plaintiff's job.  Mr. DiChiara would not respond. Mr. DiChiara then became irate, aggressive, and unprofessional by cursing at Plaintiff in front of his coworkers and two (2) student workers.  Mr. DiChiara then said Plaintiff was suspended for insubordination.  Mr. DiChiara has testified under oath that he used profanity in this meeting and that doing so was inappropriate conduct for a manager.  The fact that Mr. DiChiara disciplined Plaintiff for "asking" about missing the meeting, and not actually missing the meeting, demonstrates that Mr. DiChiara did so to harass Plaintiff.

28.     Immediately following this incident, Plaintiff went to Todd Copeland, the Human Resources partner for the Facilities & Grounds Department, to complain.  Plaintiff formally disputed the 3 ½ day suspension per UA policy and complained about Mr. DiChiara's unprofessional behavior.   Under UA policy, Plaintiff should not have been suspended unless he had a prior disciplinary action for insubordination, which he did not.

29.     In early July 2013, A. J. Johnson, the Assistant Manager of Building Maintenance, assigned Plaintiff and other Building Maintenance employees to

renovate the Sigma Chi house.  Per UA policy, Building Maintenance managers are required to request EHS test for asbestos prior to Building Maintenance beginning any renovation projects.  Plaintiff discovered that his managers had not tested the Sigma Chi house for asbestos prior to assigning the renovation to Plaintiff and his team. Plaintiff became concerned about the presence of asbestos in the ceiling of a restroom and reported it to Marty Summers in EHS.  Mr. Summers acknowledged that he had not tested the area for asbestos and stated that he would sample the insulation in the ceiling.  Mr. Summers reported his interaction with Plaintiff to Plaintiff's supervisor, Mr. Hamner.  The asbestos test came back positive indicating the presence of asbestos.

30.     Within one week of Plaintiff's reporting asbestos a second time, Mr. DiChiara became very angry and devised a false basis to issue Plaintiff a Performance Improvement Plan ("PIP") on July 12, 2013. The PIP singled out Plaintiff by requiring him to demonstrate five "core competencies" that were not used with any other employee on campus, including employees in the Building Maintenance department.  In particular, the PIP questioned Plaintiff's ethics and integrity and cited seven unidentified incidents of Plaintiff's attitude or working relationships that allegedly needed improvement. None of these competencies were related to Plaintiff's job duties as a carpenter.

31.     Mr. DiChiara would not discuss what seven unidentified incidents

he was referring to where Plaintiff's attitude or conduct needed improvement and no such incidents were documented in Plaintiff's personnel file. Mr. DiChiara threatened Plaintiff that he would be terminated if he was unable to meet these 5 "core competencies," but gave Plaintiff no concrete way to measure his improvement. Mr. DiChiara also singled Plaintiff out by making him meet with Mr. DiChiara and two other managers, Mr. Hamner and Mr. Johnson, every month for 1 ½ years until it was determined he met their criteria for improvement. Mr. DiChiara did not make any other employee meet these competencies or attend these weekly meetings.

32.     These five "core competencies" were part of a Human Resources program that had been considered for implementation, but ultimately was never instituted. Mr. DiChiara held Plaintiff to a non-existent standard for UA employees in retaliation for reporting improper asbestos handling procedures a second time.

33.     Plaintiff filed a formal dispute regarding the PIP, which complained that Mr. DiChiara again violated the progressive counseling and discipline procedure, threatened Plaintiff that he would be dealt with "harshly" if he told anyone about the PIP, included false information in the PIP which violated UA Policy 400, and was harassing Plaintiff. Plaintiff also reported he was concerned about retaliation from management. Plaintiff also submitted a formal complaint

to Employee Relations-Human Resources and A.J. Johnston, Associate Manager of Building Maintenance.

34.     Mr. DiChiara responded by stating he would "uphold all actions" in the PIP and that his portion of the staff dispute process was concluded.  Mr. Weubold, the second level supervisor, responded by stating he found no retaliation or policy violations, and that the PIP should stay in place other than Plaintiff was not required to read a self-help book assigned as part of the PIP. Duane Lamb, Assistant Vice President of Facilities & Grounds, also formally responded by stating that he found no retaliation and that the actions taken by Mr. DiChiara were "lenient."

35.     On September 17, 2013, Plaintiff requested to mediate the disputed PIP. Mr. Copeland in HR informed Plaintiff that mediation was not possible because the Building Maintenance Department refused to participate.

36.     On September 17, 2013, Plaintiff also met with Mr. Lamb, Assistant Vice President of Facilities & Grounds regarding Plaintiff's initial write up in 2010 for leaving the job site to report asbestos abatement problems to EHS. During the meeting, Mr. Lamb continuously repeated that Plaintiff could have been terminated for "leaving the job" two (2) years prior when Plaintiff reported improper asbestos abatement and focused on how Plaintiff's reporting the improper abatement made him and other management look bad.   He also

criticized Plaintiff for "cutting his legs out from under him" by triggering an investigation into the improper abatement.  Mr. Lamb's comments made clear that Plaintiff's supervisors held a grudge against him for reporting improper asbestos testing and abatement procedures.

37.     On September 26, 2013, Mr. DiChiara issued Plaintiff a written warning for alleged behavior/conduct infraction on September 20, 2013 for allegedly telling an employee who questioned his paycheck that "you haven't learned yet that the University is going to do what benefits the University."

38.     On October 2, 2013, Plaintiff was required to meet with Gwen Hood of HR and his supervisors, Mr. DiChiara, Mr. Hamner, and Mr. Johnson.  In this meeting, Mr. DiChiara attempted to psychologically evaluate Plaintiff by interrogating him about his opinions on the chain of command, appropriate conduct towards supervisors, and how negative attitudes affect organizations. This meeting was another example of Plaintiff's supervisors harassing him in retaliation for reporting inadequate asbestos testing and improper abatement procedures.

39.     On October 8, 2013, Plaintiff filed a formal dispute about the September 26, 2013, disciplinary action, pointing out that the alleged statement was reported by a third party who was not party to the conversation in which Plaintiff allegedly made the statement and that Mr. DiChiara again violated UA's

14

guidelines on the use of corrective counseling forms.  Mr. DiChiara responded that Plaintiff had violated UA policy by "displaying disrespectful and/or inappropriate behaviors towards students, employees, visitors or supervisors." Plaintiff also formally complained to Mr. Weubold in a meeting on October 31, 2013.  Mr. Weubold responded that he found no misconduct by Plaintiff's supervisors.

40.    On October 24, 2013, Mr. DiChiara issued a Revised PIP which included a formal follow up meeting with Plaintiff's supervisors every thirty (30) days.

41.    In or around July 2014, the Building Maintenance Department needed to assign an employee to work at the Alabama Adult Psychiatric Building which replaced Bryce Hospital.  It was a very unpopular work assignment due to the risk of working around severely mentally ill patients.  Plaintiff volunteered for the assignment.  As a result, Mr. DiChiara complimented Plaintiff's attitude and discontinued the monthly meetings to discuss Plaintiff's past disciplinary issues.

42.    On March 12, 2015, Mr. DiChiara issued Plaintiff a "final counseling" for "recent unprofessional behavior in violation of previous PIP" for allegedly displaying an unprofessional manner when asked to take on assignments by not following the chain of command, questioning the actions of his supervisors, asking more than one supervisor the same question, and referring an

15

employee to another supervisor to address the employee's concern about a potential issue. Plaintiff disputed this disciplinary action in a meeting with Mr. Hamner, Mr. DiChiara, and Mr. Marlowe who had become the manager of the carpenters. Plaintiff requested several times for Mr. DiChiara to allow him to review the corrective counseling form Plaintiff was asked to sign, and Mr. DiChiara refused. During the meeting, Mr. DiChiara laughed at Plaintiff when he asked for an HR representative to be present, stating he was having the "greatest day today." All three supervisors bullied and belittled Plaintiff during the meeting.

43.     Plaintiff also filed a formal dispute regarding this disciplinary action. Plaintiff requested twice to meet with Nancy Whittaker, Associate Vice President for Administration and Interim Associate Vice President for Human Resources. Ms. Whittaker would not return his calls.

44.     Beginning the summer of 2015, the stress of the ongoing workplace harassment required Plaintiff to seek counseling and treatment for depression, sleep loss, and anxiety. Plaintiff's supervisors were aware that he sought counseling because he mentioned it when he requested time off to attend counseling sessions.

45.     On July 15, 2015, the Building Maintenance department received a report that there was a room on the third floor of a campus dormitory, Lakeside

16

Residence Hall, that could not be accessed. Once the room was opened, management found that it had been made into a makeshift break room as well as a storage room. Plaintiff only worked in the Lakeside Residence Hall to renovate a bathroom or occasionally to help a co-worker who was assigned to the building for other projects. Plaintiff entered the storage room on occasion to retrieve supplies.

46.     On July 27, 2015, Mr. DiChiara sent Plaintiff a letter while Plaintiff was on a family vacation notifying him of his termination for "unauthorized breaks." By terminating Plaintiff on July 27, 2015, Mr. DiChiara blocked Plaintiff from being eligible to vest for his UA pension.

47.      Plaintiff did not take unauthorized breaks. On occasion, Plaintiff would be unable to begin a work assignment until another employee, such as an electrician or plumber, had completed his work assignment. As a result, on occasion Plaintiff had to wait before beginning his carpentry portion of the work assignment. In this regard, Plaintiff had periods of time waiting to begin work in the same way as other employees whose work was delayed by the pace of work by other employees. Waiting onsite was a more efficient use of time because, in order to pack his supplies and prepare to go to another job site while waiting, would have taken at least an hour.

48.     This was a common practice among all Building Maintenance

employees.  Other employees who were delayed in starting work in this manner were not disciplined.  Prior to his termination, Plaintiff was never issued a verbal warning for taking unauthorized breaks.

49.     Plaintiff applied for unemployment compensation which UA contested.

50.     On January 26, 2016, the Board of Appeals for the Alabama Department of Labor held a hearing to determine whether Plaintiff engaged in misconduct and was terminated for cause. The Board issued a determination that there was no evidence of misconduct by Plaintiff.

51.     At the appeal hearing, Mr. DiChiara testified that he did not expect Plaintiff to perform work of other tradesmen such as an electrician or plumber in order to be able to start the carpentry portion of a work assignment. The Board issued a determination that the "unauthorized breaks" were "simply a result of their skill waiting on another skill to begin" and found no evidence of "dishonesty" by Plaintiff.

52.     UA never disciplined Mr. DiChiara for his treatment of Plaintiff. Instead, in 2014 or 2015, UA promoted Mr. DiChiara to Director of Building Maintenance.

## <u>COUNT ONE</u>

## SECTION 504 OF THE REHABILITATION ACT
## DISCRIMINATION, HARASSMENT,
## FAILURE TO ACCOMMODATE, AND RETALIATION
## AGAINST ALL DEFENDANTS

53.     Forsyth realleges and incorporates paragraphs 1-52 as if fully set forth herein.

54.     Forsyth is a qualified individual with the disabilities of anxiety and depression.

55.     Forsyth sought counseling and received ongoing treatment through Defendant's employee assistance program.

56.     Defendants were aware that Forsyth was undergoing counseling.

57.     Defendants had a record of Forsyth's disabilities.

58.     Defendants perceived Forsyth as a person with a disability.

59.     Defendants perceived Forsyth as having a mental disability that altered the major life functions of, *inter alia*, working.

60.     Defendants perceived Forsyth as having a mental disability that altered the major life functions of, *inter alia*, the operation of his neurological system or brain.

61.     Forsyth's disabilities could be reasonably accommodated.

62.     Defendants failed to reasonably accommodate Forsyth's disabilities.

63.     Defendants intentionally subjected Forsyth to less preferable terms

and conditions of employment, including pay and benefits.

64.    Defendants intentionally subjected Forsyth to a hostile work environment based on disability.

65.    After Forsyth complained, Defendants failed to investigate or remedy the unlawful conduct.

66.    After Forsyth complained, Defendants intentionally subjected Forsyth to a retaliatory hostile work environment.

67.    Defendants unlawfully and intentionally terminated Forsyth's employment based on Forsyth's exercise of his lawfully protected rights under Section 504.

68.    Defendant is a recipient of federal funding.

69.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement, and emotional distress.

70.    Forsyth seeks all equitable and/or prospective relief available at law from Defendant BOT and Defendants DiChiara and Lamb in their official capacities, including, but not limited to specific performance, reinstatement, injunctive relief, surcharge, or such other and further relief the Court may award.

71.    Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future

earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

## COUNT TWO

### RETALIATION UNDER FIRST AMENDMENT
### AGAINST ALL DEFENDANTS

72.     Forsyth realleges and incorporates paragraphs 1-52 as if fully set forth herein.

73.     Defendants intentionally and willfully retaliated against Plaintiff for his Constitutionally-protected speech under the First Amendment.

74.     Plaintiff's Constitutionally-protected speech regarded a matter of public concern, the risk to students, visitors, and UA employees entering, living in, or working in campus buildings infested with unabated asbestos, and UA's failure to properly use federal funds intended for abatement of asbestos in campus buildings.

75.     As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement, and emotional distress.

76.     Forsyth seeks all equitable and/or prospective relief available at law from Defendant BOT and Defendants DiChiara and Lamb in their official capacities, including, but not limited to specific performance, reinstatement,

injunctive relief, surcharge, or such other and further relief the Court may award.

77.    Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

## COUNT THREE

## FOURTEENTH AMENDMENT DUE PROCESS VIOLATION AGAINST ALL DEFENDANTS

78.    Forsyth realleges and incorporates paragraphs 1-52 as if fully set forth herein.

79.    Defendants violated Plaintiff's Fourteenth Amendment right to procedural due process by unjustifiably and mistakenly depriving him of property interest in his employment.  Defendants violated Plaintiff's right to due process by terminating Plaintiff for allegedly taking "unauthorized breaks" without following UA's progressive discipline policy, presenting Plaintiff with evidence that he took unauthorized breaks, providing Plaintiff a hearing in which to present evidence that he did not take unauthorized breaks, and by equally disciplining any other employee who allegedly took "unauthorized breaks."

80.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement, and

emotional distress.

81.    Forsyth seeks all equitable and/or prospective relief available at law from Defendant BOT and Defendants DiChiara and Lamb in their official capacities, including, but not limited to specific performance, reinstatement, injunctive relief, surcharge, or such other and further relief the Court may award.

82.    Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

## **COUNT FOUR**

### **ASBESTOS SCHOOL HAZARD ABATEMENT REAUTHORIZATION ACT OF 1990 ("ASHARA"), 20 U.S.C. § 4018 AGAINST DEFENDANT UNIVERSITY OF ALABAMA BOARD OF TRUSTEES**

83.    Forsyth realleges and incorporates paragraphs 1-52 as if fully set forth herein.

84.    Defendant BOT, by and through UA, is a recipient of federal funds.

85.    Forsyth made public information regarding Defendants' failure to adhere to asbestos-removal policies and procedures, including failing to assign a properly trained and supervised abatement team, failure to remove other workers while asbestos abatement was being performed, and failure to safeguard students,

UA personnel, and the general public from areas in which asbestos abatement was being performed.

86.     Defendants subjected Forsyth to discrimination, harassment, and retaliation based on the information he made public, culminating in his termination just before his retirement vested after ten (10) years of credible service.

87.      As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement, and emotional distress.

88.     Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

## COUNT FIVE

### ASBESTOS SCHOOL HAZARD DETECTION AND CONTROL ACT ("ASHDCA"), 20 U.S.C. § 3608 AGAINST DEFENDANT UNIVERSITY OF ALABAMA BOARD OF TRUSTEES

89.     Plaintiff realleges and incorporates by reference paragraphs 1-52 with the same force and effect as if fully set out in specific detail herein below.

90.     Defendant BOT is a recipient of federal funds.

91.    Forsyth made public information regarding Defendants' failure to adhere to asbestos-removal policies and procedures, including failing to assign a properly trained and supervised abatement team, failure to remove other workers while asbestos abatement was being performed, and failure to safeguard students, UA personnel, and the general public from areas in which asbestos abatement was being performed.

92.    Defendants subjected Forsyth to discrimination, harassment, and retaliation based on the information he made public, culminating in his termination just before his retirement vested after ten (10) years of credible service.

93.     As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement, and emotional distress.

94.    Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

## COUNT SIX

### STATE EMPLOYEE PROTECTION ACT
### ALABAMA CODE § 36-26A-3
### AGAINST DEFENDANTS DICHIARA AND LAMB

95.    Plaintiff realleges and incorporates by reference paragraphs 1-52 with the same force and effect as if fully set out in specific detail herein below.

96.    Alabama Code Section 36-26A-3 holds "[a] supervisor shall not discharge, demote, transfer, or otherwise discriminate against a state employee regarding the state employee's compensation, terms, conditions, or privileges of employment" if the employee reports "a violation of a law, a regulation, or a rule . . . to a public body." ALA. CODE 36-26A-3 (1975).

97.    Forsyth complained over the course of several years to UA supervisors, Employee Relations, and Human Resources, both orally and in writing, by virtue of formal, written complaints about UA's violations of asbestos abatement policies and procedures.

98.    Defendant DiChiara subjected Forsyth to discrimination, harassment, and retaliation based his complaints, culminating in his termination just before his retirement vested after ten (10) years of credible service.

99.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement, and emotional distress.

26

100.   Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

## COUNT VII

### 42 U.S.C. § 1983
### AGAINST DEFENDANTS DICHIARA AND LAMB

101.   Plaintiff realleges and incorporates by reference paragraphs 1-51 with the same force and effect as if fully set out in specific detail herein below.

102.   Section 1983 imposes liability on one who, "under color of state law," deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

103.   Forsyth alleges that Defendant DiChiara deprived him of his clearly-established First and Fourteenth Amendment rights, Section 504 of the Rehabilitation Act, ASHARA, ASHDCA, and Alabama State law.

104.  Mr. DiChiara discriminated against and harassed Plaintiff by repeatedly disciplining him for false or frivolous infractions for which Mr. DiChiara has not disciplined other employees in the same manner.

105.   Mr. DiChiara terminated Plaintiff because Plaintiff reported violations of federal laws, rules, regulations and UA policy regarding testing for and abating asbestos, and utilization of federal funds.

106.   No valid public policy will be served by immunizing DiChiara from liability where his tortious conduct resulted in Forsyth's injuries.

107.   DiChiara's acts were willful, malicious, fraudulent, in bad faith, beyond his authority, or under a mistaken interpretation of the law.

108.    As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered financial loss, loss of career advancement, loss of retirement and emotional distress.

109.   Forsyth seeks all relief available at law from Defendants, including, but not limited to, loss wages and benefits, loss of retirement, loss of future earnings, compensatory damages, emotional distress damages, costs, interest, and attorneys' fees.

**WHEREFORE**, Forsyth respectfully requests this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment on the basis of disability, infringement of First and Fourteenth Amendment rights, and retaliation on the basis of protected activity or reporting of violations of law;

B.    Order Defendant to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful

employment practices, including implementing a policy against disability discrimination in the workplace and against retaliation for engaging in protected activities;

C.     Order Defendant to make Forsyth whole by awarding all declaratory, injunctive, and/or legal relief available at law;

D.     Award Forsyth costs, expenses, and reasonable attorneys' fees; and,

F.     Award such other and further relief which the Court deems necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

/s/Alicia K. Haynes
Alicia K. Haynes ASB-8237-E23A

/s/Sonya C. Edwards
Sonya C. Edwards ASB-8848-S73E

Attorneys for Plaintiff Martin Forsyth

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
E-mail:  scedwards@haynes-haynes.com

**PLEASE SERVE THE FOLLOWING DEFENDANTS
BY CERTIFIED MAIL:**

The University of Alabama System
Office of President
c/o Dr. Stuart R. Bell
Box 870100
Tuscaloosa, AL 35487

The University of Alabama
Board of Trustees
ATTN: Office of Counsel
500 University Boulevard East
Tuscaloosa, AL 35401

Mr. Neal DiChiara
1849 Catala Road
Vestavia, AL 35216-1745

Mr. Duane Lamb
1450 Greystone Drive
Tuscaloosa, AL 35406-3221