UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MARTIN FORSYTH,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:17-cv-00854-RDP |
| } | |
| **UNIVERSITY OF ALABAMA BOARD** } | |
| **OF TRUSTEES, et al.,** } | |
| } | |
| **Defendants.** } | |

**MEMORANDUM OPINION**

This case is before the court on Defendants' Motion to Dismiss the Complaint. (Doc. # 5). This employment discrimination action includes claims under Section 504 of the Rehabilitation Act, the First and Fourteenth Amendments to the United States Constitution, the Asbestos School Hazard Abatement Reauthorization Act of 1990 ("ASHARA"), the Asbestos School Hazard Detection and Control Act ("ASHDCA"), the State Employee Protection Act, and 42 U.S.C. § 1983. (*See generally* Doc. # 1). The parties have fully briefed the Motion to Dismiss (Docs. # 11, 12), and it is under submission.

**I.    Background**

Plaintiff worked as a carpenter in the facilities and grounds department at the University of Alabama at Tuscaloosa (the "University"), which is governed by Defendant University of Alabama Board of Trustees (the "Board"). (Doc. # 1 at ¶ 4). The Board hired Plaintiff in October 2005. (*Id.* at ¶ 14). According to Plaintiff, he received positive performance reviews in 2007, 2008, and 2009. (*Id.* at ¶ 16).

In 2010, Plaintiff was assigned work in the University's health department building, which was partially occupied by the University's women's resource center. (*Id.* at ¶ 18). "Plaintiff became aware that asbestos was present in the Health Department Building in the floor tile in the Tuberculosis Clinic and that [the University] had failed to properly abate the asbestos." (*Id.*). Plaintiff alleges that the University should have removed all personnel from the building, but it continued to require building maintenance and women's resource center employees to work in the building. (*Id.* at ¶ 20). On September 2, 2010, Plaintiff left the health department building and reported "concerns that students, [University] personnel, and workers may be exposed to friable asbestos" to the University's environmental health and safety department. (*Id.* at ¶ 21). Thereafter, Plaintiff and two other workers expressed concerns about retaliation to a human resources employee. (*Id* at ¶ 22).

On September 21, 2010, Plaintiff received a verbal warning from Michael Hubbard, an associate manager of building maintenance, for leaving his assigned work site on September 2, 2010 without proper authorization. (*Id.* at ¶¶ 15, 23). The other employees who reported concerns about retaliation also received written warnings from Defendant Neal DiChiara, the manager of building maintenance. (*Id.* at ¶¶ 17, 23). Plaintiff disputed the verbal warning and explained that the warning was retaliation for his asbestos-related report. (*Id.* at ¶ 24). Moreover, Plaintiff recounts in the Complaint that his crew completed the renovations in the health department building on time, despite leaving the job site on September 2. (*Id.* at ¶¶ 24-25).

In June 2011, DiChiara suspended Plaintiff for three and a half days without pay for insubordination. (*Id.* at ¶ 26). According to the Complaint, DiChiara scheduled "a 'mandatory' meeting on ethics" at the last minute to occur after Plaintiff's work shift had ended. (*Id.*).

Plaintiff asked Hubbard and DiChiara for leave to miss the meeting, but DiChiara aggressively responded that Plaintiff could "just see what happens." (*Id.* at ¶ 27). DiChiara used profanity towards Plaintiff and suspended him for insubordination, a suspension Plaintiff alleges was based on his question about missing the meeting. (*Id.*). Plaintiff formally disputed the suspension. (*Id.* at ¶ 28).

In July 2013, Plaintiff was assigned to a renovation of the Sigma Chi fraternity house. (*Id.* at ¶ 29). Plaintiff learned that the environmental health and safety department had not tested the house for asbestos, and he reported his suspicions of asbestos in a ceiling to an employee of the University's environmental health and safety department. (*Id.*). That University employee notified Plaintiff's supervisor of the asbestos report, and the environmental health department discovered asbestos in the fraternity house. (*Id.*). On July 12, 2013, DiChiara placed Plaintiff on a performance improvement plan that allegedly "questioned Plaintiff's ethics and integrity and cited seven unidentified incidents of Plaintiff's attitude or working relationships that allegedly needed improvement." (*Id.* at ¶ 30). Plaintiff alleges that the issues identified in his performance plan did not relate to his job and that the plan lacked specific measures of improvement. (*Id.* at ¶¶ 30-31). Plaintiff formally disputed the performance plan and submitted a formal complaint to the human resources department. (*Id.* at ¶ 33). Ultimately, the University's management upheld the performance plan. (*Id.* at ¶¶ 34-35). Moreover, Defendant Duane Lamb, an assistant vice president at the University, told Plaintiff during a September 2013 meeting that (1) he could have been terminated for leaving his job in 2010, (2) he made management look bad by reporting improper asbestos abatement activity, and (3) he had triggered an investigation that cut the supervisors' legs "out from under [them]." (*Id.* at ¶ 36).

In September 2013, DiChiara issued Plaintiff a written warning for allegedly telling another University employee that "you haven't learned yet that the University is going to do what benefits the University." (*Id.* at ¶ 37). On October 8, 2013, Plaintiff formally disputed the written warning, but the reviewing supervisor found no misconduct. (*Id.* at ¶ 39). On October 24, 2013, DiChiara issued Plaintiff a revised performance plan. (*Id.* at ¶ 40). In July 2014, DiChiara discontinued monthly meetings that were part of the performance plan when Plaintiff volunteered for an unpopular work assignment. (*Id.* at ¶ 41).

In March 2015, DiChiara issued Plaintiff a "final counseling" premised on "allegedly displaying an unprofessional manner when asked to take on assignments by not following the chain of command, questioning the actions of his supervisors, asking more than one supervisor the same question, and referring an employee to another supervisor to address the employee's concern about a potential issue." (*Id.* at ¶ 42). Plaintiff formally disputed the counseling, but the University vice president he called to complain about the discipline would not return his calls. (*Id.* at ¶ 43). In the summer of 2015, Plaintiff sought counseling and treatment for depression and anxiety. (*Id.* at ¶ 44). He informed his supervisors about the counseling when he requested time off in order to attend counseling sessions. (*Id.*).

In July 2015, managers in the building maintenance department discovered a "makeshift break room" in a residence hall. (*Id.* at ¶ 45). The room also functioned as a storage area. (*Id.*). Plaintiff occasionally worked in the residence hall, but merely "entered the storage room on occasion to retrieve supplies." (*Id.*). On July 27, 2015, DiChiara terminated Plaintiff for taking unauthorized breaks. (*Id.* at ¶ 46). Plaintiff denies that he took unauthorized breaks, and explains that he occasionally had to wait on site for another employee to finish work. (*Id.* at ¶

47). He also contends that other employees received no discipline for taking breaks on site when delayed by other maintenance employees finishing their work. (*Id.* at ¶ 48).

**II.     Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual

5

allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Defendants have attached several exhibits to their Motion to Dismiss. In almost all circumstances, a court cannot consider evidence that is not attached to the complaint in deciding whether to dismiss a claim under Rule 12(b)(6). *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (explaining that an extrinsic document can only be considered in deciding a motion to dismiss if it is central to a plaintiff's claim and its authenticity is not challenged). The court finds that the attached documents do not meet this circuit's standard for considering extrinsic evidence at the motion to dismiss stage. Therefore, the court has not considered them in ruling upon Defendants' Rule 12(b)(6) arguments for dismissal.

## III. Analysis

After careful review, the court concludes that all of Plaintiff's claims are subject to dismissal for failure to state a claim. Nevertheless, the court will grant Plaintiff leave to amend his Rehabilitation Act count.

### A. Plaintiff's Rehabilitation Act Count Fails to State a Plausible Claim

Defendants first argue that a Rehabilitation Act claim cannot be asserted against Defendants DiChiara and Lamb in their individual or official capacities. (Doc. # 5 at 10).

Plaintiff responds that he does not intend to pursuant a Rehabilitation Act claim against the individual Defendants. (Doc. # 11 at 5). Accordingly, by agreement, all Rehabilitation Act claims against Defendants DiChiara and Lamb are due to be dismissed.

Second, Defendants argue that Plaintiff's Rehabilitation Act count should be dismissed because Plaintiff has not alleged that his disabilities were the sole reason for his termination. (Doc. # 5 at 11-12). Plaintiff responds that he is permitted to raise alternative and inconsistent claims in his Complaint. (Doc. # 11 at 5-6). The court agrees. Federal Rule of Civil Procedure 8(d)(3) allows a party to "state as many separate claims or defenses as it has, regardless of consistency." Thus, a plaintiff is not obligated to choose between a Rehabilitation Act claim and other retaliation claims at the pleading stage if he or she can -- consistent with Federal Rule of Civil Procedure 11 -- present plausible allegations in support of each claim, even if the claims are ultimately inconsistent because of the causation standard for a Rehabilitation Act claim. Defendants' request to dismiss the Rehabilitation Act count on this ground is due to be denied.

Third, Defendants argue that the Complaint merely presents a conclusory allegation of Plaintiff's disability. (Doc. # 5 at 12-13). On this issue, the court agrees. The Rehabilitation Act defines the term "disability" to include: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include the functioning of the neurological and brain systems. *Id.* § 12102(2)(B). Plaintiff's Complaint alleges that he suffered

from depression, sleep loss, and anxiety (Doc. # 1 at ¶¶ 44, 54), but it fails to explain how any of these conditions substantially limited a major life activity. Indeed, while Plaintiff summarily alleges that University employees perceived him to have a mental disability that altered major life functions, including working (*id.* at ¶¶ 59-60), he has not alleged anywhere in the Complaint that his medical conditions actually limited his ability to work or his neurological functioning. (*See id.* at ¶¶ 44, 53-71). Therefore, Plaintiff has not plausibly alleged that he suffered a disability that substantially limited a major life activity.

Moreover, Plaintiff has not plausibly alleged that any Defendant or any University employee perceived him to be disabled. As an initial matter, Plaintiff has not alleged that he informed his supervisors about his mental conditions; rather, he has alleged that he informed them about his need to attend counseling sessions. (*See id.* at ¶¶ 44, 56). An allegation that a defendant knew of counseling, standing alone, is not enough to plausibly indicate that the defendant regarded the plaintiff as having the condition being treated through counseling or that the defendant regarded the plaintiff as having a condition that altered a major life function. *Cf. Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183 (11th Cir. 2005) (explaining that a decisionmaker must have actual knowledge of a disability in order to discriminate against a disabled individual "because of" such disability). Plaintiff's allegations that Defendants perceived him "as a person with a disability" and perceived that disability to alter the major life functions of working and the operation of his neurological and brain systems are wholly conclusory allegations and are entitled to no weight. (*See* Doc. # 1 at ¶¶ 58-60). Similarly, Plaintiff's allegation that Defendants possessed a record of his disabilities is conclusory because Plaintiff offers no indication of what record(s) caused Defendants to discriminate against him. (*See id.* at ¶¶ 58, 67). Because Plaintiff has failed to plausibly plead that a University

decisionmaker discriminated against him because of a disability, a record of a disability, or because they regarded him as having a disability, Plaintiff's Rehabilitation Act discrimination claim is due to be dismissed without prejudice.

Finally, Defendants ask the court to dismiss all Rehabilitation Act claims based on harassment, failure to accommodate, and retaliation. (Doc. # 5 at 14). Plaintiff has not specifically argued in support of these claims in his response brief. (*See* Doc. # 11 at 5-6). In any event, the court agrees with Defendants that the Rehabilitation Act harassment, failure to accommodate, and retaliation claims in Count One of the Complaint are nothing more than conclusory allegations outlining the elements of such claims. Therefore, these Rehabilitation Act claims are also due to be dismissed without prejudice.

### B. Plaintiff Cannot Maintain an ASHARA or ASHDCA Claim Against the Board Because It Governs Post-Secondary Educational Institutions

Defendants argue that Plaintiff's asbestos-related retaliation claims fail because the University is not subject to the ASHARA or the ASHDCA. (Doc. # 5 at 19-20). Plaintiff responds that Congress intended to protect school children and school employees when it passed these anti-retaliation statutes. (Doc. # 11 at 9). Moreover, Plaintiff argues that the "applicable program[s]" covered by the ASHARA and the ASHDCA include all schools for which the Department of Education has administrative responsibility under the Department of Education Organization Act. (*Id.* at 10) (quoting 20 U.S.C. § 3601).

These claims appear to present an issue of first impression in this circuit – whether the ASHARA and the ASHDCA apply to the Board, an entity that governs post-secondary educational institutions. It is axiomatic that "[t]he starting point in statutory interpretation is the language of the statute itself." *Ardestani v. I.N.S.*, 502 U.S. 129, 135 (1991) (internal quotation marks and alterations omitted). "If the 'language at issue has a plain and unambiguous meaning

9

with regard to the particular dispute in the case,' and 'the statutory scheme is coherent and consistent,' the inquiry is over." *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (internal quotation marks omitted)). "In determining whether a statute is plain or ambiguous, [the court considers] 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Robinson*, 519 U.S. at 341).

The ASHARA and the ASHDCA both provide that:

> No State or local educational agency receiving assistance under this subchapter may discharge any employee or otherwise discriminate against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because the employee has brought to the attention of the public information concerning any asbestos problem in the school buildings within the jurisdiction of such agency.

20 U.S.C. § 4018.[1] The ASHARA defines a "local educational agency" as: "(A) any local educational agency as defined in [20 U.S.C. § 7801]; and (B) the governing authority of any nonprofit elementary or secondary school." 20 U.S.C. § 4020(4). In turn, § 7801 explains that a "local educational agency" is:

> a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a public service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or of or for a combination of school districts or counties that is recognized in a State as an administrative agency for its public elementary schools or secondary schools.

20 U.S.C. § 7801(30)(A). This definition of "local educational agency" also applies to the ASHDCA's anti-retaliation provision.[2] The ASHARA and the ASHDCA define "State" in a

---

[1] Section 3608 of Title 20 is essentially identical, except it refers to a "chapter" of the U.S. Code, rather than a "subchapter."

[2] The ASHDCA defines a "local educational agency" to include "any local educational agency as defined in section 198(a)(10) of the Elementary and Secondary Education Act of 1965." 20 U.S.C. § 3610(4)(A). That definition actually cross-references a 1978 amendment to the Elementary and Secondary Education Act, which

10

manner that includes the state of Alabama, *see* 20 U.S.C. §§ 3610(8), 4020(8), but neither statute includes a definition for a "State educational agency."

After careful review, the court agrees with Defendants that the Board is not an "educational agency" subject to the ASHARA and the ASHDCA. Both statutes regulate the conduct of state and local educational agencies, and they define an "educational agency" as an institution that controls, directs, or provides services for "public elementary or secondary schools." *See* 20 U.S.C. §§ 3610(4), 4020(4), 7801(30)(A); Act of Nov. 1, 1978, Pub. L. No. 95-561, § 198(a)(10), 92 Stat. 2143, 2199 (1978). Elementary schools generally provide "the first four to eight years of a child's formal education," and secondary schools are "intermediate in level between elementary school and college." *Elementary School & Secondary School*, AMERICAN HERITAGE COLLEGE DICTIONARY 452, 1253 (4th ed. 2002). Accordingly, the ASHARA and the ASHDCA plainly regulate the conduct of agencies that control, direct, or provide pre-collegiate primary and secondary education.[3] The Board -- properly designated as the "Board of Trustees of the University of Alabama" -- is an Alabama state agency responsible for administering the "state university." Ala. Code §§ 16-47-1, 16-47-30. Because the Board administers post-secondary education for the "state university," it is not a state "educational agency" governed by the anti-retaliation provisions of the ASHARA and the ASHDCA, and Counts Four and Five against the Board are due to be dismissed.

---

contains essentially the same definition for "local educational agency" as that used in 20 U.S.C. § 7801. *See* Act of Nov. 1, 1978, Pub. L. No. 95-561, § 198(a)(10), 92 Stat. 2143, 2199 (1978).

[3] Plaintiff relies on the Congressional findings included in 20 U.S.C. § 3601 to argue that "Congress did not deem young children in elementary schools as the only individuals worthy of protection from asbestos." (Doc. # 11 at 9-10). This argument misconstrues the findings in § 3601. Although the statutory provision states that asbestos is a hazard to school employees, as well as school children, 20 U.S.C. § 3601(a)(6), the relevant statutory purpose provision also explains that Congress intended to "assure that no employee of any *local educational agency* suffers any disciplinary action as a result of calling attention to potential asbestos hazards." *Id.* § 3601(b)(5) (emphasis added). This provision of the ASHDCA was enacted in 1980, after the 1978 amendments to the Elementary and Secondary Education Act defined "local educational agency" to refer to agencies responsible for elementary and secondary education. *See* Act of Nov. 1, 1978, Pub. L. No. 95-561, § 198(a)(10), 92 Stat. 2143, 2199 (1978). By referencing local educational agencies, Congress expressed an intent to protect employees at elementary and secondary schools, not post-secondary educational institutions like the University.

### C. Plaintiff's State Employee Protection Act Claim is Due to be Dismissed

Defendants argue that Plaintiff cannot maintain a claim under the State Employee Protection Act because that law is not applicable to employees at institutions of higher learning. (Doc. # 5 at 20). Plaintiff has agreed to voluntarily dismiss this claim. (Doc. # 11 at 11). In light of Plaintiff's consent to dismissal, Count Six of the Complaint is due to be dismissed.

### D. Analysis of Plaintiff's § 1983 Claims

Defendants present three arguments against Plaintiff's § 1983 claims. First, Defendants argue that the claims fail to present any constitutional or statutory violation. (Doc. # 5 at 15-19, 21-22). Second, they argue that DiChiara and Lamb are entitled to qualified immunity at this stage because DiChiara acted within his discretionary authority, and neither DiChiara nor Lamb violated any clearly established right. (*Id.* at 23-26). Third, Defendants argue that the § 1983 claims are barred by the applicable two-year statute of limitations. (*Id.* at 26-27).

#### 1. Plaintiff Made His Alleged Reports in His Role of University Employee

In challenging Counts Two and Seven of the Complaint, Defendants first argue that the asbestos-related complains are not protected speech because Plaintiff made them to other University employees in his role as a University employee. (Doc. # 5 at 15-16).

A state employee may not be terminated in retaliation for speech protected under the First Amendment. *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). In addressing a First Amendment retaliation claim, the court first considers "(1) if the government employee spoke as an employee or citizen and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007). Here, Defendants only argue for dismissal of the First Amendment retaliation claim under the first prong of *Garcetti*. "[W]hen public employees make statements pursuant to

their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The "controlling factor" in determining whether an employee spoke as an employee or a citizen is whether the statement was made pursuant to the employee's official duties. *Alves v. Bd. of Regents of Univ. Sys. of Ga.*, 804 F.3d 1149, 1161 (11th Cir. 2015). Factors that may be considered in this analysis include "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." *Id.* The court must carefully apply *Garcetti*'s "exception to First Amendment protection" to only exempt "speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary responsibilities of her employment." *Id.* at 1162 (discussing the limiting principles on *Garcetti* established in *Lane v. Franks*, 134 S. Ct. 2369 (2014)).

In *Alves*, the Eleventh Circuit addressed a First Amendment retaliation claim filed by five employees of a university counseling center. *Id.* at 1153. The employees submitted a memorandum to university officials about the "poor leadership and mismanagement" of the counseling center's director. *Id.* The Eleventh Circuit held that the employees spoke as employees, not citizens, when submitting the memorandum. *Id.* at 1165. In support, the *Alves* opinion recounted that the memorandum addressed how the director's conduct harmed the employees' abilities to supervise subordinates, recruit interns and candidates, and provide counseling services. *Id.* at 1164. Thus, the complaints in the memorandum related to the employees' ordinary duties. *Id.* The Eleventh Circuit concluded that the employees wrote the memorandum to correct the mismanagement that "interfered" with their job performance. *Id.* at 1164-65. Therefore, because the employees submitted the memorandum "in the course of

carrying out their daily activities," the memorandum was submitted pursuant to the employees' duties and constituted employee speech. *See id.*

Here, it is evident that Plaintiff's verbal reports of inadequate asbestos remediation owed their existence to Plaintiff's professional responsibilities. Plaintiff's reports were directed toward other University employees and made on the University's campus. (*See* Doc. # 1 at ¶¶ 21, 29). And, it is also apparent from the Complaint that Plaintiff's asbestos reports concerned hazards that prevented him from performing his routine job duties. Indeed, supervisors assigned Plaintiff to work at the two buildings where he reported the possible presence of asbestos and inadequate remediation. (*See id.* at ¶¶ 18, 29). Plaintiff's asbestos-related reports concerned a subject matter of his job because he made them in an attempt to force University officials to properly remediate asbestos present at the worksites where he performed his job duties. *Cf. Boyce*, 510 F.3d at 1346 (mentioning that the plaintiffs complained "about their workloads for a work reason: they wanted to have their caseloads reduced or to receive help with their work"). Thus, as in *Alves*, Plaintiff presented his complaints -- at least in part -- to resolve issues that interfered with his job performance. *See Alves*, 804 F.3d at 1164. "[T]he Eleventh Circuit has repeatedly found [that] an employee who makes internal reports regarding mismanagement and fraud generally speaks pursuant to her professional duties rather than as a citizen." *Boglin v. Bd. of Trustees of Ala. Agric. & Mech. Univ.*, 2018 WL 723168, at *8 (N.D. Ala. Feb. 6, 2018) (citing *Alves*, 804 F.3d at 1164-65; *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1285 (11th Cir. 2009); *Phillips v. City of Dawsonville*, 499 F.3d 1239, 1242-43 (11th Cir. 2007)). Consistent with these cases, the court concludes that Plaintiff was speaking as an employee when he made the

asbestos-related reports described in the Complaint and, as such, his speech was not protected by the First Amendment.[4]

Because Plaintiff has not plausibly pled that he made the speech at issue as a citizen, all First Amendment retaliation claims in his Complaint are due to be dismissed for failure to state a claim. In addition and alternatively, because Plaintiff has not disputed DiChiara's assertion that he acted within his discretionary authority when disciplining and terminating Plaintiff. (*See* Doc. # 5 at 24-25). Therefore, for this separate reason, Defendant DiChiara is entitled to qualified immunity from any First Amendment retaliation claim against him in his individual capacity because Plaintiff has not plausibly pled a violation of his First Amendment rights.[5]

### 2. Plaintiff Has Not Alleged a Plausible Property Interest in Continued Employment

Defendants assert that Plaintiff's procedural due process claim in Count Three fails as a matter of law because Plaintiff lacked a property interest in his continued employment. (Doc. # 5 at 18-19). Plaintiff disagrees. He argues he has pled such a protected property interest, and that Defendants improperly rely on extrinsic evidence at the motion to dismiss stage. (Doc. # 11 at 8-9). Defendants reply that Plaintiff's conclusory assertion of a property interest in continued employment is insufficient to defeat their motion to dismiss. (Doc. # 12 at 6). After careful review, the court agrees with Defendants.

---

[4] The court need not decide -- and does not decide -- whether Plaintiff's speech involved a matter of public concern. Speech relating to public safety issues generally is held to involve matters of public concern, rather than merely matters of private interest. *See Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (holding that an employee's speech on behalf of a union-like organization with co-workers and supervisors involved a matter of public concern because the organization sought to improve safety for children, and "speech relating to the safety of the public involves a matter of public concern"). The court expresses no opinion on the more difficult question of whether Plaintiff's speech to other University employees about a safety issue addressed a matter of public or private concern.

[5] Defendants argue that Plaintiff fails to state a § 1983 claim against Defendant Lamb because the allegations in Count VII only relate to DiChiara. (*See* Doc. # 1 at ¶¶ 101-09). The court observes that the Complaint describes actions taken by Defendant Lamb that might conceivably be characterized as retaliatory conduct. (*See* Doc. # 1 at ¶¶ 34, 36) (discussing Lamb's alleged affirmance of a performance plan and Lamb's alleged negative statements about Plaintiff's earlier asbestos-related reports).

"The Fourteenth Amendment protects against the government's deprivation of liberty or property without procedural due process." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991). Where an individual has a "property right" in continued employment, a state cannot deprive that individual of that property without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978); *Goss v. Lopez*, 419 U.S. 565, 573-74 (1975)). However, "[p]roperty interests are not created by the Constitution." *Id.* Instead, they are created from "existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

"For purposes of establishing a property right in continued employment under Alabama law, the crucial question is whether the employment is terminable by the employer 'at will' or whether the employer's discretion to discharge the employee is somehow fettered." *Green v. City of Hamilton, Hous. Auth.*, 937 F.2d 1561, 1564 (11th Cir. 1991). Indeed, a public employee who may be discharged at will has no property interest in continued employment and no entitlement to due process. *Davis v. Mobile Consortium of CETA*, 857 F.2d 737, 741 (11th Cir. 1988).

> It has long been the law in Alabama that employment is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration. "[A]bsent an agreement on a definite term, any employment is considered to be 'at-will,' and may be terminated by either party, with or without cause or justification." *Clark v. America's First Credit Union*, 585 So. 2d 1367, 1369 (Ala. 1991). Furthermore, employees in Alabama bear a heavy burden of proof to establish that an employment relationship is other than "at will." The law considers lifetime or permanent employment contracts to be extraordinary and not lightly to be implied. *Alabama Mills, Inc. v. Smith*, 237 Ala. 296, 301, 186 So. 699, 704 (1939).

*Howard v. Wolff Broad. Corp.*, 611 So. 2d 307, 310-11 (Ala. 1992).

Here, Plaintiff's allegation that he held a property interest in continued employment is wholly conclusory. Plaintiff alleges in Count Three that Defendants deprived him of a "property interest in his employment" (Doc. # 1 at ¶ 79), but he has not alleged that he worked under a contract for lifetime employment or an employment contract for a specific duration. *See Howard*, 611 So. 2d at 310. Nor has Plaintiff alleged in his Complaint (or argued in his opposition brief) that he received a property interest in continued employment through any form of *de facto* tenure. *Cf. Gray v. Bd. of Regents of Univ. Sys. of Ga.*, 150 F.3d 1347, 1352 (11th Cir. 1998) (describing such property interests). Plaintiff has not plausibly pled a property interest protected by the Fourteenth Amendment's procedural due process requirements, and, thus, he fails to plead a right to relief under the due process clause of the Fourteenth Amendment. For this reason, all procedural due process claims in the Complaint are due to be dismissed for failure to state a claim.

      **3.**      **Plaintiff's First Amendment Retaliation and Fourteenth Amendment Due Process Claims Against the Board and the Individual Defendants in their Official Capacities are Due to Be Dismissed**

In Counts Two and Three of the Complaint, Plaintiff brings a First Amendment retaliation and a Fourteenth Amendment due process claim against the Board and the individual Defendants in their official capacities. (Doc. # 1 at ¶¶ 72-82). Defendants respond, in part, that they are entitled to Eleventh Amendment immunity from Counts Two and Three. (Doc. # 5 at 22 & n. 87). The court agrees.

Notably, Counts Two and Three of the Complaint are brought under the First and Fourteenth Amendments to the Constitution and do not directly reference § 1983. Yet, § 1983 "provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution." *Smiley v. Ala. Dep't of Transp.*, 778 F.

Supp. 2d 1283, 1297 (M.D. Ala. 2011). Section 1983 is a vehicle for redressing violations of federal rights; it does not itself create any substantive rights. *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010). Moreover, § 1983 does not abrogate a state's Eleventh Amendment immunity, and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment precludes private individuals from suing non-consenting states in federal court. *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). In addition to protecting states from suit by private individuals in federal court, Eleventh Amendment immunity has been extended to state agencies and instrumentalities and state officials. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). Both the Alabama Supreme Court and the Eleventh Circuit have held that an Alabama public university's board of trustees is considered an agent or instrumentality of the state. *See id*; *Rigby v. Auburn Univ.*, 448 So. 2d 345, 347 (Ala. 1984). *See also Cox v. Bd. of Trustees of Univ. of Ala.*, 49 So. 814, 817 (Ala. 1909) (describing the Board as "mere agents of the state"); *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006) (holding that the Board is a state agency for Eleventh Amendment purposes); *Harris v. Bd. of Trustees of Univ. of Ala.*, 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012) (same). Additionally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citations omitted).

Because Plaintiff's constitutional claims in Counts Two and Three must be construed as § 1983 claims, and the Board is a state agency entitled to Eleventh Amendment immunity against § 1983 claims, it follows that Counts Two and Three are due to be dismissed with prejudice

against the Board.⁶ *See Harden*, 760 F.2d at 1163; *Eubank*, 210 F. App'x at 844; *Harris*, 846 F. Supp. 2d at 1233. Further, Plaintiff's § 1983 claims against the individual Defendants in their official capacities as state officials are due to be dismissed. *See Will*, 491 U.S. at 71. Plaintiff invokes the *Ex Parte Young* exception to Eleventh Amendment immunity in his opposition brief, and the Complaint seeks some equitable relief that Plaintiff might be able to obtain under *Ex Parte Young*. (*See* Doc. # 1 at ¶¶ 76, 81). *See also Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) ("[R]equests for reinstatement constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment."). But, Plaintiff cannot obtain such prospective injunctive relief because the Complaint alleges no plausible constitutional violation that can be remedied by Defendants DiChiara or Lamb.

## IV. Conclusion

For the reasons explained above, all of the claims in Plaintiff's Complaint are due to be dismissed. Counts Two and Three, to the extent they are raised against the University, are due to be dismissed with prejudice. Counts Four and Five of the Complaint are due to be dismissed because Plaintiff cannot plausibly assert a violation of the ASHARA or the ASHDCA against the Board. In all other respects, the claims are due to be dismissed without prejudice for failure to state a claim. The court will grant Plaintiff leave to amend his complaint if he can plausibly allege factual allegations that state a claim upon which relief may be granted. An Order consistent with this Memorandum Opinion will be entered.

---

⁶ In addition, and in any event, the Board is not a suable entity under § 1983. *Will*, 491 U.S. at 71; *Lapides v. Bd. of Regents of Univ. of Ga.*, 535 U.S. 613, 617 (2002).

**DONE** and **ORDERED** this February 23, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE