UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MARTIN FORSYTH, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 7:17-cv-00854-RDP |
| } | |
| UNIVERSITY OF ALABAMA BOARD } | |
| OF TRUSTEES, } | |
| } | |
| Defendant. } | |

## **MEMORANDUM OPINION**

This case is before the court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. # 36). The Motion has been fully briefed (*see* Docs. # 36, 40-41), and it is ripe for decision. After careful review, and for the reasons explained below, the court concludes that Defendant's Motion to Dismiss is due to be granted, but Plaintiff is due to be granted an opportunity to amend his complaint.

**I.  Background**

Plaintiff worked as a carpenter in the facilities and grounds department at the University of Alabama at Tuscaloosa (the "University"), which is governed by Defendant University of Alabama Board of Trustees (the "Board"). (Doc. # 34 at ¶ 4). The Board hired Plaintiff in October 2005. (*Id.* at ¶ 6). According to Plaintiff, he received positive performance reviews from 2005 to 2009. (*Id.* at ¶¶ 7-9).

In 2010, Plaintiff was assigned work in the University's health department building. (*Id.* at ¶ 11). Plaintiff became aware that the building contained asbestos and reported his concerns to the University's environmental health and safety ("EHS") department. (*Id.* at ¶¶ 12, 17-18).

Thereafter, Plaintiff alleges that his supervisors "began overly criticizing" him, and Michael Hubbard counseled him nineteen days after he reported the presence of asbestos. (*Id.* at ¶ 19). Two other employees received similar discipline from Neal DiChiara. (*Id.* at ¶ 20).

Plaintiff's Amended Complaint alleges that DiChiara "continued to look for opportunities to discipline Plaintiff over frivolous matters and to make false accusations against Plaintiff." (*Id.* at ¶ 23). In June 2011, DiChiara suspended Plaintiff for three and a half days without pay for insubordination. (*Id.*). Following this suspension, Plaintiff began to withdraw from coworkers and "became fearful that Mr. DiChiara was going to manufacture some excuse for firing him." (*Id.* at ¶ 25). In July 2013, Plaintiff was assigned to a renovation of the Sigma Chi fraternity house. (*Id.* at ¶ 27). Plaintiff learned that the EHS department had not tested the house for asbestos, and he reported his suspicion that there was asbestos in a ceiling to an EHS department employee. (*Id.*).

On July 12, 2013, DiChiara placed Plaintiff on a performance improvement plan. (*Id.* at ¶ 29). DiChiara's improvement plan discussed Plaintiff's "inability to interact with others," his negative attitude, his avoidance of other people, and his preference to work alone. (*Id.* at ¶ 30). Plaintiff alleges that DiChiara recognized that he suffered "from a mental impairment" because he required Plaintiff to read a self-improvement book. (*Id.* at ¶ 31).

According to the Complaint, "[b]y July 2013, Plaintiff was manifesting the symptoms of depression." (*Id.* at ¶ 33). Because of his depression, he became frustrated over small matters, interacted with a small group of individuals, expressed a negative attitude, felt constant anxiety at work, and suffered from sleeplessness. (*Id.* at ¶ 35). DiChiara allegedly aggravated Plaintiff's depression by instituting a performance improvement plan. (*Id.* at ¶ 36). In September 2013,

DiChiara issued Plaintiff a written warning for his negative attitude in the workplace. (*Id.* at ¶ 37).

In October 2013, Plaintiff met with his supervisors and a University human resources employee. (*Id.* at ¶ 38). During that meeting, DiChiara questioned Plaintiff about his behaviors and his social interactions at work and at home. (*Id.*). Later in October 2013, DiChiara provided Plaintiff an amended performance improvement plan that required Plaintiff to meet with his supervisors every thirty days, even though DiChiara "knew or should have known that this action would further aggravate Plaintiff's depression." (*Id.* at ¶ 41).

In March 2015, DiChiara issued Plaintiff a "final counseling" based on his claim that Plaintiff displayed an unprofessional demeanor when asked to complete an assignment. (*Id.* at ¶ 43). Plaintiff asked to review the corrective counseling form DiChiara asked him to sign, but DiChiara refused to let him see it. (*Id.*). Plaintiff began counseling and treatment for his depression during the summer of 2015. (*Id.* at ¶ 44). His supervisors were aware that he sought counseling because he mentioned it to them. (*Id.*). In July 2015, University management discovered a locked makeshift break room in a residence hall. (*Id.* at ¶ 45). On July 27, 2015, DiChiara terminated Plaintiff for taking unauthorized breaks. (*Id.* at ¶ 47). Plaintiff has denied taking unauthorized breaks. (*Id.* at ¶ 48).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule

8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.    Analysis**

Plaintiff raises two claims under § 504 of the Rehabilitation Act.  First, Plaintiff claims that Defendant unlawfully terminated him because of his depression, which is a disability.  (Doc. # 34 at ¶¶ 63-67).  Second, Plaintiff claims that Defendant's evaluation and disciplinary system had a disparate impact on individuals manifesting symptoms of depression who were otherwise fully capable of performing their jobs.  (*Id.* at ¶¶ 68-75).

In its initial brief, Defendant seeks dismissal of the Rehabilitation Act disparate treatment claim on two grounds.  It primarily argues that Plaintiff has not sufficiently alleged a disability covered by the Rehabilitation Act.  (Doc. # 36 at 10-12).  Alternatively, it contends that the Amended Complaint fails to plausibly allege that the employment actions at issue occurred solely because of Plaintiff's alleged disability, since (1) the facts alleged do not show that the University was aware of Plaintiff's disability, and (2) the facts alleged indicate that Plaintiff's supervisors also disciplined and criticized him for reporting asbestos concerns.  (*Id.* at 12-15).  The court addresses each argument, in turn.  The court then will discuss the additional arguments raised in Defendant's reply brief directed at the disparate impact Rehabilitation Act claim.

> **A.    Plaintiff Has Plausibly Pled that His Depression Substantially Limited the Major Life Activity of Interacting with Others**

The Rehabilitation Act defines the term "disability" to include: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  Interacting with others also is a major
5

life activity. 29 C.F.R. § 1630.2(i)(1)(i). *See also Jacobs v. N.C. Admin. Office of Courts*, 780 F.3d 562, 573 (4th Cir. 2015) (deferring to the EEOC's reasonable determination that interacting with others is a major life activity). To determine whether an impairment substantially limits a major life activity, the court compares the plaintiff's ability to perform the activity "to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The functional limitation required for a disability is lower than that required by courts prior to the passage of the ADA Amendments Act in 2009, and it usually does not require the consideration of medical or statistical evidence. *Id.* § 1630.2(j)(1)(iv)-(v).

Plaintiff's alleged disability is depression. The Eleventh Circuit has held depression is a mental impairment. *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir.), *amended*, 102 F.3d 1118 (11th Cir. 1996). Plaintiff alleges that his depression substantially limited his ability to interact with others.[1] (Doc. # 34 at ¶ 35). This allegation is plausible based upon the following assertions: (1) from 2010 to 2013, DiChiara observed Plaintiff's rare interactions with managers and other members of the University's building management department; (2) DiChiara observed Plaintiff's friendliness towards a small group of individuals; (3) DiChiara observed Plaintiff's preference to work alone; and (4) in October 2013, DiChiara asked Plaintiff about his social interactions at work and at home. (*Id.* at ¶¶ 30, 38). Though Plaintiff could have pled more details about the difficulties he faced in interacting with others, the court finds that Plaintiff's prolonged aversion towards interacting with others -- which a supervisor allegedly

---

[1] Plaintiff also alleges that his depression caused sleeplessness, but the court finds that Plaintiff's bare allegations of sleeplessness are insufficient to show that his difficulties sleeping were worse than difficulties suffered by most people in the general population. (Doc. # 34 at ¶¶ 35, 44). *See also Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 393-94 (E.D.N.Y. 2016) (explaining that difficulties in sleeping are widespread, and finding that a plaintiff failed to plausibly plead a substantial limitation in her ability to sleep where she failed to allege the frequency, duration, or severity of her sleep impairment).

observed and discussed with him during a meeting -- plausibly asserts a substantial limitation of his ability to interact with others.

Plaintiff also alleges and argues that Defendant regarded him as disabled due to depression and anxiety. (Docs. # 34 at ¶ 62; 40 at 11). To state a "regarded as" disability discrimination claim, a plaintiff must allege, among other things, that the defendant subjected him or her to a prohibited action because of an actual or perceived physical or mental impairment. *Lewis v. City of Union City*, 877 F.3d 1000, 1011 (11th Cir. 2017). A plaintiff cannot plausibly claim that a defendant regarded him or her as disabled solely based on allegations that (1) the defendant knew the plaintiff had visited the doctor and (2) the defendant received a "conclusory doctor's excuse." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246-47 (11th Cir. 2015). "The mere fact that an employer is aware of an impairment is not sufficient to show that the employer regarded the employee as disabled or that the perception caused an adverse employment action." *Jenks v. Naples Cmty. Hosp., Inc.*, 829 F. Supp. 2d 1235, 1254 (M.D. Fla. 2011). Here, Plaintiff's factual allegations, at most, indicate that DiChiara knew of symptoms of an impairment, but they fail to plausibly indicate that DiChiara regarded Plaintiff as disabled once he perceived the symptoms.[2] Therefore, Plaintiff has failed to plausibly allege that Defendant regarded him as disabled. Nevertheless, Plaintiff's Rehabilitation Act claims may proceed based on his allegations that his depression substantially limited at least one major life activity.

---

[2] In the Amended Complaint, Plaintiff asserts that "Defendant regarded Plaintiff as having depression and anxiety, mental impairments that substantially limit the operation of the neurological system or brain." (Doc. # 34 at ¶ 62). The flaw in this allegation is that depression and anxiety occur in varying degrees of severity, and not all cases of depression or anxiety are severe enough to constitute a disability. *See, e.g.*, *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016) (explaining that depression and anxiety "are not per se disabilities"), *aff'd*, 687 F. App'x 748 (10th Cir. 2017). Accordingly, even if DiChiara perceived Plaintiff's depression-related symptoms, it does not necessarily follow that DiChiara or Defendant perceived Plaintiff's depressive condition as a substantial impairment. *Cf. Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1336-37 (M.D. Ala. 1998) (describing an inclination "to believe that symptoms of depression or anxiety could never clearly be such manifestations of an illness that the employer would be held to have imputed knowledge of that illness").

### B. Plaintiff Has Failed to Plead that Defendant Actually Knew of Any Disability He Suffered

In disability discrimination cases, a plaintiff must establish that the decisionmaker actually knew of his or her disability. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185-86 (11th Cir. 2005) (explaining the Eleventh Circuit's denial of a constructive knowledge standard for ADA discrimination claims, and stating that "[i]ts fundamental flaw lies in the fact that a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee 'because of' that disability"). Courts have applied this "actual knowledge" standard to Rehabilitation Act discrimination claims. *E.g.*, *Williamson v. Clarke Cty. Dep't of Human Resources*, 834 F. Supp. 2d 1310, 1322-23 (S.D. Ala. 2011). The Eleventh Circuit has affirmed a grant of summary judgment on an ADA claim where the plaintiff argued that the defendant had imputed knowledge of an intellectual disability because she informed one of the defendant's employees about her illiteracy and her prior enrollment in special education courses. *See Morisky v. Broward Cty.*, 80 F.3d 445, 447-49 (11th Cir. 1996). In addition, at least one district court has rejected the proposition (advanced by Plaintiff here) that a decisionmaker can have actual knowledge of an employee's depression or anxiety by observing his or her symptoms. *Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1336-37 (M.D. Ala. 1998)

Here, the court concludes that Plaintiff's Rehabilitation Act disparate treatment claim fails because the allegations in the Amended Complaint fail to plausibly indicate that DiChiara (the decisionmaker who allegedly terminated Plaintiff) actually knew of Plaintiff's depression. The court is persuaded by *Rogers*'s explanation for why a decisionmaker cannot be said to have actual knowledge of an employee's depression merely by observing symptoms of depression. *See Rogers*, 18 F. Supp. 2d at 1336-37. Indeed, the symptoms discussed in the Amended Complaint -- frustration over small matters, interacting with a small group of individuals, and a

negative attitude -- can reflect a poor temperament, a poor work attitude, or an underlying mental impairment. (Doc. # 34 at ¶ 35). And, DiChiara's knowledge that Plaintiff sought counseling is not sufficient to show that he actually knew of the condition for which Plaintiff sought counseling. (*Id.* at ¶ 44). *See also Surtain*, 789 F.3d at 1246-47 (holding that the decisionmaker's knowledge of a doctor's visit and a general doctor's excuse was insufficient to establish that the decisionmaker knew of the disability). For these reasons, the court finds that Plaintiff has failed to plead facts plausibly indicating Defendant's actual knowledge of his depression.[3]

### C. Plaintiff's Disparate Impact Claim is Due to be Repled

In Count Two of the Amended Complaint, Plaintiff complains that Defendant's "evaluation and disciplinary system has a disparate impact on individuals, such as Plaintiff, solely because they manifest symptoms of a disability." (*Id.* at ¶ 70). Plaintiff contends in his opposition brief that Defendant has not contested the disparate impact claim in the pending motion. (Doc. # 40 at 17-18). Defendant replies that it challenged the disparate impact claim because a plaintiff's disability and a defendant's knowledge of the disability are necessary elements for a disparate impact Rehabilitation Act claim. (Doc. # 41 at 2 n. 1). Alternatively, it argues for the first time in the reply brief that the disparate impact claim fails because Plaintiff has not identified a specific University policy he challenges. (*Id.* at 10). And, it contends that

---

[3] The court need not decide -- and does not decide -- whether Plaintiff's Rehabilitation Act claims fail because he has pled facts suggesting that his disability was not the sole cause of his termination. As a general matter, a party may assert inconsistent claims or defenses in a pleading. Fed. R. Civ. P. 8(d)(3). So, Plaintiff appropriately included other discrimination and retaliation claims alongside his Rehabilitation Act claim in the initial Complaint, even though he would need to show that disability discrimination was the sole cause of his termination in order to succeed ultimately on the Rehabilitation Act count. The Amended Complaint is different, though, because it preserves the factual allegations regarding the asbestos-related retaliation, but omits the asbestos-related retaliation claims dismissed by the court in an earlier Order. As such, it is unclear whether the asbestos-related allegations are mere inconsistent factual allegations or allegations that contradict the causation standard necessary for Plaintiff to prevail. The court declines to wade into these waters, though, because the Amended Complaint fails to plausibly allege Defendant's actual knowledge of the purported disability in any event.

Plaintiff cannot obtain statistical evidence to support his disparate impact claim because such evidence is not reasonably attainable.[4] (*Id.* at 11).

Although the Eleventh Circuit has not held that a disparate impact claim is cognizable under § 504 of the Rehabilitation Act, it has assumed that such a claim is cognizable.[5] *Berg v. Fla. Dep't of Labor & Emp't Sec., Div. of Vocational Rehab.*, 163 F.3d 1251, 1254 (11th Cir. 1998). Generally, in order to succeed on a disparate impact claim, a plaintiff must show "that the defendant employed a facially neutral employment practice that had a significant discriminatory effect." *Stephen v. PGA Sheraton Resort, Ltd.*, 873 F.2d 276, 279 (11th Cir. 1989) (discussing a Title VII disparate impact claim). A plaintiff must satisfy two steps to establish a prima facie case of disparate impact discrimination: (1) he or she "must identify the specific employment practice that allegedly has a disproportionate impact"; and (2) he or she must show causation through "statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *Pouyeh v. Bascom Palmer Eye Institute*, 613 F. App'x 802, 810 (11th Cir. 2015) (discussing a Title VII disparate impact claim). A plaintiff does not need to show intentional discrimination by the defendant, though. *Id.*

Here, as discussed above, Plaintiff has plausibly pled that he was disabled under the Rehabilitation Act. The court disagrees with Defendant that Plaintiff must plausibly plead its knowledge of the disability in order to pursue a disparate impact claim, since Plaintiff does not need to establish intentional discrimination to succeed on a disparate impact theory. *See Pouyeh*,

---

[4] In a footnote in its reply brief, Defendant argues for the first time that the disparate impact claim is barred because Plaintiff failed to raise it in his charge with the Equal Employment Opportunity Commission. (Doc. # 41 at 9-10 n. 30). The court declines to address an argument raised for the first time in a footnote of a reply brief. *Cf. Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (disregarding an argument raised for the first time in an appellate reply brief).

[5] Defendant has not contested that a disparate impact claim is viable under the Rehabilitation Act. Therefore, the court assumes, for purposes of this Memorandum Opinion, that such a claim is viable. *See Berg v. Fla. Dep't of Labor & Emp't Sec., Div. of Vocational Rehab.*, 163 F.3d 1251, 1254 (11th Cir. 1998).

613 F. App'x at 810. Accordingly, Plaintiff's disparate impact claim is not due to be dismissed for the reasons raised in the initial motion. Having said that, the court agrees with Defendant that the Amended Complaint fails to specify the policies that make up the "evaluation and disciplinary system" being challenged in Count Two. The "system" challenged in Count Two is described so broadly that Defendant lacks fair notice of which University policies are challenged. But, because Defendant raised this argument for the first time in its reply brief, Plaintiff has not received an opportunity to respond to the argument, and he may be able to describe the policies challenged in Count Two more specifically. Therefore, the court will dismiss the disparate impact claim as pled, but grant Plaintiff one final opportunity to replead it.

**IV.     Conclusion**

For the reasons explained above, Defendant's Motion to Dismiss is due to be granted, and the claims in Plaintiff's Amended Complaint are due to be dismissed without prejudice. The court will grant Plaintiff one final opportunity to amend both claims. But the parties will be directed to meet and confer before a Second Amended Complaint is filed. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 15, 2018.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE