UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **MARTIN FORSYTH,** | } |
| Plaintiff, | } |
| v. | } Case No.: 7:17-cv-00854-RDP |
| **UNIVERSITY OF ALABAMA BOARD OF TRUSTEES,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. # 46). The Motion has been fully briefed (*see* Docs. # 46, 48-49), and it is ripe for decision. After careful review, and for the reasons explained below, the court concludes that Defendant's Motion to Dismiss is due to be denied.

**I.    Background**

Plaintiff worked as a carpenter in the Facilities & Grounds Department at the University of Alabama at Tuscaloosa (the "University"), which is governed by Defendant University of Alabama Board of Trustees (the "Board"). (Doc. # 45 at ¶ 4). The Board hired Plaintiff in October 2005. (*Id.* at ¶ 6). According to Plaintiff, from 2005 to 2009, he received positive performance reviews and no disciplinary actions. (*Id.* at ¶¶ 7-9).

In 2010, Plaintiff was assigned work in the University's Health Department Building. (*Id.* at ¶ 11). Plaintiff learned that the building contained asbestos and reported his concerns to the University's environmental health and safety ("EHS") department. (*Id.* at ¶¶ 12, 17-18). Thereafter, Plaintiff alleges that his supervisors "began overly criticizing" him. (*Id.* at ¶ 19). His

1

supervisor, Michael Hubbard. gave him his first corrective verbal counseling action nineteen days after he reported the presence of asbestos. (*Id.*). Two other employees received similar discipline from Neal DiChiara. (*Id.* at ¶ 20).

Plaintiff's Amended Complaint alleges that DiChiara "continued to look for opportunities to discipline Plaintiff over frivolous matters and to make false accusations against Plaintiff." (*Id.* at ¶ 23). In June 2011, DiChiara suspended Plaintiff for three and a half days without pay for insubordination because he asked permission to miss a mandatory meeting. (*Id.*). DiChiara went so far as to "curse Plaintiff in front of his co-workers." (*Id.* at ¶ 24). Following this suspension, Plaintiff began to withdraw from coworkers and "became fearful that Mr. DiChiara was going to manufacture some excuse for firing him." (*Id.* at ¶ 25). Plaintiff again sought relief from the University's Human Resources Department, but to no avail. (*Id.* at ¶ 26). In July 2013, Plaintiff was assigned to a renovation of the Sigma Chi fraternity house. (*Id.* at ¶ 27). Plaintiff learned that the EHS department had not tested the house for asbestos, and he reported his suspicion that there was asbestos in a ceiling to an EHS department employee. (*Id.*).

On July 12, 2013, DiChiara placed Plaintiff on a Performance Improvement Plan. (*Id.* at ¶ 29). DiChiara's improvement plan cited Plaintiff's "inability to interact with others," his negative attitude, his avoidance of other people, and his preference to work alone. (*Id.* at ¶ 30). Plaintiff alleges that DiChiara recognized that he suffered "from a mental impairment" because he required Plaintiff to read a self-improvement book and discuss it with him over a series of meetings. (*Id.* at ¶ 31).

According to the Complaint, "[b]y July 2013, Plaintiff was manifesting the symptoms of depression." (*Id.* at ¶ 33). Because of his depression, he became frustrated over small matters, interacted with a small group of individuals, expressed a negative attitude, felt constant anxiety at

work, and suffered from sleeplessness. (*Id.* at ¶ 35). DiChiara allegedly aggravated Plaintiff's depression by instituting a Performance Improvement Plan. (*Id.* at ¶ 36). In September 2013, DiChiara issued Plaintiff a written warning for his negative attitude in the workplace. (*Id.* at ¶ 38).

In October 2013, Plaintiff met with his supervisors and a University human resources employee. (*Id.* at ¶ 39). During that meeting, DiChiara questioned Plaintiff about his behaviors and his social interactions at work and at home. (*Id.*). Later in October 2013, DiChiara provided Plaintiff an amended Performance Improvement Plan that required Plaintiff to meet with his supervisors every thirty days, even though DiChiara "knew or should have known that this action would further aggravate Plaintiff's depression." (*Id.* at ¶ 42).

Plaintiff began counseling and treatment for his depression in early 2015. (*Id.* at ¶ 44). His supervisors were aware that he sought counseling because he mentioned it to them. (*Id.*). In March 2015, DiChiara issued Plaintiff a "final counseling" action based on his claim that Plaintiff displayed an unprofessional demeanor when asked to complete an assignment. (*Id.* at ¶ 45). Plaintiff asked to review the corrective counseling form DiChiara asked him to sign, but DiChiara refused to let him see it. (*Id.*).

In July 2015, University management discovered a locked makeshift break room in a residence hall project where Plaintiff was working. (*Id.* at ¶ 46). On July 27, 2015, DiChiara terminated Plaintiff for taking unauthorized breaks. (*Id.* at ¶ 48). Plaintiff has consistently denied taking unauthorized breaks. (*Id.* at ¶ 49). The following year on January 26, 2016, the Board of Appeals for the Alabama Department of Labor "issued a determination that there was no evidence of misconduct by Plaintiff." (*Id.* at ¶ 52).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).

That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III. Analysis

Plaintiff raises two claims under § 504 of the Rehabilitation Act. First, Plaintiff claims that Defendant unlawfully terminated him because of a disability—his depression. (Doc. # 45 at ¶¶ 62-70). Second, Plaintiff claims that Defendant's evaluation and disciplinary system had a disparate impact on individuals manifesting symptoms of depression who were otherwise fully capable of performing their jobs. (*Id.* at ¶¶ 71-93).

In its Motion to Dismiss Plaintiff's Second Amended Complaint, Defendant seeks dismissal of the Rehabilitation Act disparate treatment claim on two grounds. It primarily argues that Plaintiff has not sufficiently alleged facts indicating the decisionmaker's actual knowledge of Plaintiff's depression. (Doc. # 46 at 12-13). Defendant also renews its contention from prior Motions to Dismiss that the Amended Complaint fails to plausibly allege that the employment actions at issue occurred solely because of Plaintiff's alleged disability, since the facts alleged indicate that Plaintiff's supervisors also disciplined and criticized him for reporting his asbestos concerns. (*Id.* at 17-18). Defendant next argues that Plaintiff's disparate impact claim should be dismissed because the complaint (1) fails to define the "evaluation and disciplinary system" that allegedly had a disproportionate impact and (2) fails to provide statistical evidence indicating that the challenged policy results in discrimination. (*Id.* at 15-17; 18-20).

The court addresses each argument, in turn,[1] and finds that Plaintiff's Second Amended Complaint contains plausible allegations sufficient to survive Defendant's Motion to Dismiss. This decision was a close call because the court believes Defendant's arguments are more properly characterized as Rule 56 arguments in support of summary judgment. Its assertion that Plaintiff must plead his disparate treatment and disparate impact claims with more detail, while appealing, is inappropriate at the pleadings stage of litigation. To be clear, Plaintiff will be required to establish a thorough Rule 56 record prior to trial. However, at the current procedural posture, Plaintiff has adequately pled his claims and is entitled to civil discovery.

### A. Plaintiff Has Plausibly Pled a Disparate Treatment Claim

The Rehabilitation Act defines the term "disability" to include: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also* 29 C.F.R. § 1630.2(g). Plaintiff has not argued the existence of a disability based on "a record of impairment." However, because it is unclear from the face of Plaintiff's Second Amended Complaint which remaining definition of a disability Plaintiff is asserting, the court has analyzed each, in turn. After doing so, and for reasons stated below, Plaintiff's disparate treatment claim is sufficiently pled and Defendant's Motion to Dismiss is due to be denied.

Although this court previously determined that Plaintiff successfully pled that his depression qualifies as a disability under the "actual disability" prong,[2] it nevertheless granted

---

[1] In its initial Motion to Dismiss Plaintiff's Second Amended Complaint, Defendant also argued that Plaintiff's disparate impact claim was due to be dismissed because Plaintiff did not include the claim in his EEOC charge. (Doc. # 46 at 18). However, in its Reply brief, Defendant concedes that there is no exhaustion requirement under the Rehabilitation Act. (Doc. # 49 at 9). Because this matter is no longer in dispute, the court does not address it here.

[2] In its June 15, 2018 opinion granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint, this court found that Plaintiff successfully alleged that his depression was a disability, because it is a mental impairment that substantially limited a major life activity—his ability to interact with others. (Doc. #42). This court reaffirms this conclusion based on the following renewed allegations: "(1) from 2010 to 2013, DiChiara observed Plaintiff's rare

Defendant's motion to dismiss because Plaintiff failed to plead facts indicating that the decisionmaker had actual knowledge of his disability. (Doc. # 42 at 8-9) (citing *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185-86 (11th Cir. 2005) (explaining the Eleventh Circuit's denial of a constructive knowledge standard for ADA discrimination claims and stating that "[i]ts fundamental flaw lies in the fact that a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee 'because of' that disability").

Consistent with *Cordoba*'s actual knowledge requirement, Plaintiff has successfully pled that Defendant's agents, including Mr. DiChiara the decisionmaker, knew of his disability. The Second Amended Complaint alleges that in early spring of 2015, "Plaintiff's supervisors were aware that he was seeking counseling because he mentioned it when he requested time off to attend counseling sessions." (Doc. # 45 at ¶ 44). Plaintiff specifically told his then-direct supervisor, David Marlowe, that he was suffering from depression and anxiety." (*Id*. at ¶¶ 44, 56-57, 64). Plaintiff further alleges that the decisionmaker, Mr. DiChiara, "knew of Plaintiff's symptoms and understood that they were symptoms of depression." (*Id*. at ¶ 58). While the court agrees with Defendant that Plaintiff could have been more specific in alleging how his supervisors, particularly DiChiara, came to know of his disability, this is information the court believes could be expanded upon during discovery. Taken together, the allegations in the Second Amended Complaint contain plausible allegations that DiChiara was aware that Plaintiff was seeking treatment for depression. Plaintiff's disparate treatment claim based on "actual disability" may proceed to discovery.

Plaintiff also alleges and argues that Defendant regarded him as disabled due to its observation of Plaintiff's symptoms of depression. (Docs. # 45 at ¶ 65-67; 48 at 3-10). To state a

---

interactions with managers and other members of the University's building management department; (2) DiChiara observed Plaintiff's friendliness towards a small group of individuals; (3) DiChiara observed Plaintiff's preference to work alone; and (4) in October 2013, DiChiara asked Plaintiff about his social interactions at work and at home." (*Id;* Doc. # 45 at ¶ 30, 39).

**7**

"regarded as" disability discrimination claim, a plaintiff must allege that the defendant subjected him or her to a prohibited action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). Plaintiff is correct to note (in its Reply brief) that the 2008 amendments to the ADA make it "substantially easier than before" to establish a "regarded as" disability. (Doc. # 48 at 4-5). The interpretive guidance materials attached to the ADA illustrate just how simple application of the "regarded as" prong is: "if an employer terminates an employee because he has cancer, the employer has regarded the employee as an individual with a disability." 29 C.F.R. pt. 1630 App.

In his Second Amended Complaint, Plaintiff has alleged the following: (1) "Defendant regarded Plaintiff as having a mental disability, depression, that substantially limited his major life activities of concentrating and interacting with others" (Doc. # 45 at ¶ 65); (2) "Defendant regarded Plaintiff as having depression and anxiety, mental impairments that substantially limit the operation of the neurological system or brain" (*Id*. at ¶ 66); and (3) "Defendant unlawfully and intentionally terminated Plaintiff's employment solely because of his disability, actual or regarded as…" (*Id*. at ¶ 67). Even without the language about "substantially limiting his major life activities," Plaintiff has met the amended pleading standard for a "regarded as" disparate treatment claim. Accepting these allegations as true, the Plaintiff has plausibly pled that Defendant terminated Plaintiff because of a perceived disability.

The parties are reminded, however, that "[e]stablishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability. Liability is established only if an individual meets the burden of proving that the covered entity discriminated unlawfully within the meaning of section 102 of the ADA." 29 C.F.R. pt. 1630 App. Although there may (or may not) be a substantial question about whether Plaintiff was fired *because* DiChiara regarded him as

disabled, at this point in time, the "regarded as" claim is sufficiently pled to survive Defendant's Motion to Dismiss. Any further inquiry as to the validity of these allegations may be pursued during discovery.

The court next addresses Defendant's final point of contention with Plaintiff's disparate treatment claim—that Plaintiff has not alleged that his disability was the sole cause of his termination. While Defendant correctly states that "[t]o [ultimately] succeed on his disparate treatment claim, Plaintiff must demonstrate he suffered an adverse employment action '***solely*** by reason of his handicap,'" this is not the appropriate standard to apply at the motion to dismiss phase. (Doc. # 46 at 17) (citing *Booth v. Houston*, 58 F. Supp. 3d 1277, 1296 (M.D. Ala. 2014)). At this point in time, the court is not concerned with whether Plaintiff will ultimately succeed on his claims. Rather, at this stage, he need only plead sufficient facts to allow this court to find it ***reasonable*** that discovery will yield evidence supporting his claim that he was terminated solely because of his disability. *See Twombly*, 550 U.S. at 556. Plaintiff has done so in his Second Amended Complaint.

Specifically, Plaintiff has alleged that "Defendant unlawfully and intentionally terminated Plaintiff's employment solely because of his disability…." (Doc. # 45 at ¶ 67). This is at least plausible considering the following allegations: (1) from 2010-2013, DiChiara observed Plaintiff's inability to interact with coworkers and managers; (2) one of the requirements of the July 12, 2013 PIP was that Plaintiff read a self-improvement book and discuss it with DiChiara; (3) Plaintiff was brought in front of HR and his supervisors on October 2, 2013 to discuss his social interactions at work and at home; and (4) on January 26, 2016, the Board of Appeals for the Alabama Department of Labor analyzed whether Plaintiff was terminated for cause and found that there was no evidence of Plaintiff's misconduct. (Doc. # 45 at ¶¶ 30-31, 39, 52). All of these allegations, taken together,

create more than a mere possibility that Plaintiff was terminated solely for behavioral issues related to his depression, rather than for taking unauthorized breaks. That is all that is required of Plaintiff at present.

Furthermore, Defendant's assertion that the presence of Plaintiff's asbestos-related disciplinary record in the complaint indicates a failure to plead "sole cause" is, again, premature at this point. As this court stated in its prior opinion, Federal Rule of Civil Procedure 8(d)(3) allows a party to assert inconsistent claims or defenses in a pleading. The mere presence of inconsistent allegations "does not automatically demand dismissal for failure to state a claim." *See, e.g., United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1273–74 (11th Cir.2009); *see also Dixon v. First Financial Asset Management, Inc.*, 2013 WL 12131607, at *2 (S.D. Fla 2013) (explaining that for the motion to dismiss stage of the pleadings, inconsistent allegations are permitted, "even if read together they render claims legally impossible"). It is, therefore, of no consequence for purposes of this motion to dismiss that Plaintiff preserved the factual allegations regarding his asbestos-related claims.

Because Plaintiff has adequately addressed the pleading inadequacies highlighted in this court's prior memorandum opinions, Defendant's Motion to Dismiss Plaintiff's disparate treatment claim is due to be denied.

### B. Plaintiff Has Plausibly Pled a Disparate Impact Claim

To establish a prima facie case of disparate impact discrimination under the ADA, Plaintiff must (1) identify the facially neutral employment practice or policy that allegedly had a disproportionate impact, and (2) provide statistical evidence indicating that the challenged policy results in discrimination. *See Kintz v. United Parcel Service, Inc.*, 766 F. Supp. 2d 1245 (M.D. Ala. 2011); *Smith v. Miami-Dade County*, 21 F. Supp. 3d 1292 (S.D. Fla. 2014), aff'd, 621 Fed. Appx. 955 (11th Cir. 2015). Defendant argues that Plaintiff has failed to sufficiently plead both

elements. (Doc. # 46 at 15-17; 18-20). The court disagrees. Pending before the court is a motion to dismiss, not a motion for summary judgment. Plaintiff has sufficiently pled his claim to advance to discovery.

Plaintiff has identified "an evaluation and disciplinary system which evaluated Plaintiff not on how he performed his duties but on his mental state and condition." (Doc. # 45 at ¶ 83). He further alleges that the evaluation and disciplinary system "screens out or tends to screen out individuals, like Plaintiff, who suffer from a mental disability." (Doc. # 45 at ¶ 88). While the court acknowledges that the alleged employment practice is not narrowly defined, Plaintiff's allegations, taken together, provide Defendant with sufficient notice as to the specific policies challenged. For example, Plaintiff's complaint shows he was subjected to multiple Performance Improvement Plans focusing on his workplace attitude as part of this evaluation and disciplinary system. (*Id*. at ¶ 29-37). Plaintiff also alleges that on March 12, 2015, Defendant issued him a "final counseling" plan, which ultimately culminated in a disciplinary meeting with his supervisors. (*Id*. at ¶ 45). These actions cumulatively form the basis of the "evaluation and disciplinary system" that Plaintiff challenges in Count Two of his Second Amended Complaint. Because Plaintiff has sufficiently identified a facially neutral employment practice that allegedly has a disproportionate impact on employees with depression and anxiety, he has plausibly pled the first prong of a disparate impact claim.

As to the second element, the court agrees with Defendant that, in the Eleventh Circuit, statistical evidence showing the discriminatory result of the challenged employment practice would be necessary to *prevail* on a disparate impact claim. *See Pouyeh v. Bascom Palmer Eye Inst.*, 613 Fed.Appx. 802, 810 (11th Cir. 2015) ("plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited

discrimination"); *see also Portales v. School Board of Broward County*, 2017 WL 9440573, at *6 (S.D. Fla. 2017). However, again, this is not the appropriate standard to measure Plaintiff's claims at the pleading stage. Without the benefit of discovery, it is virtually impossible for a Plaintiff to present data reflecting disparate impact. To hold otherwise would, in the vast majority of cases, shut the courthouse door on a plaintiff alleging a claim based on disparate impact. Plaintiff should be afforded the opportunity of discovery before he is required to present detailed statistics to the court. And, at the pleadings stage, it is sufficient that Plaintiff has alleged that "Defendant's evaluation and disciplinary system has a disparate impact on individuals, such as Plaintiff, who suffer from depression and anxiety solely because they manifest symptoms of that mental disability." (Doc. 45 at ¶ 85).

IV. **Conclusion**

For the reasons explained above, Defendant's Motion to Dismiss is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 20, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE